AMERICAN BRASS AND COPPER COMPANY, Appellant, *v.* MENDEL M. PINE, Trading as CROWN CHANDELIER COMPANY, and Others, Respondents.

First Department, December 13, 1918.

**Bills and notes — action against maker and indorsers of promissory notes — consideration.**

Where in an action to recover on promissory notes made by the defendant in his trade name to the order of the plaintiff and indorsed by the other defendants, it appeared that said notes were given in payment of a debt of a bankrupt corporation which had never received its discharge, owned and controlled by defendants, in consideration of the plaintiff extending to the defendants the same line of credit that it had extended to the bankrupt; that the parties had been dealing with each other for years and a definite credit had been established; that they had dealt pursuant to this oral agreement for twenty-two months without evidence of dissatisfaction and until the defendant failed to pay notes given for merchandise purchased, it was error to dismiss the complaint on the ground that there was no consideration shown for the notes inasmuch as the amount and terms of credit to be extended were not specified.

DOWLING, J., dissented, with opinion.

APPEAL by the plaintiff, American Brass and Copper Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 20th day of December, 1917, upon the decision of the court after a trial before the court, a jury having been waived.

*Macdonald De Witt* of counsel [*Howard Campbell, Jr.*, with him on the brief], for the appellant.

*Walter Carroll Low* of counsel [*Henry Hoelljes* with him on the brief], for the respondents.

PAGE, J.:

The action was to recover on six promissory notes for $100 each, made by the defendant Mendel M. Pine, in his trade name, to the order of the plaintiff, and indorsed by the other four defendants.

There is practically no dispute as to the facts in the case.

For a great many years the defendants Sidney M. Israel and David S. Pine had been continuously trading with the plaintiff, and had received a certain line of credit. Israel and Pine during this period had operated under trade names, or as owners of the stock of a corporation. In 1913 the Century Gas and Electric Fixture Company, which was owned and controlled by Israel and Pine, was adjudicated a bankrupt, but never received its discharge in bankruptcy. This corporation owed the plaintiff $7,000. In August, 1914, the defendant Sidney M. Israel, who, with the defendant David S. Pine was then acting as agent for the defendant Mendel M. Pine, doing business under the trade name of the Crown Chandelier Company, applied to the plaintiff for credit Plaintiff's president informed him that he considered Israel and David S. Pine morally liable for the debt of the Century Gas and Electric Fixture Company, and that he would be willing to extend the same line of credit to the new enterprise that he had to the said corporation, provided they would pay the debt of the corporation. After some discussion as to the manner of payment it was agreed that payments of $100 should be made monthly. Plaintiff's president required notes, indorsed by all the defendants, so that they could close the old account by crediting the same with these bills payable on the ledger. To this Israel agreed, and seventy-three notes for $100 each, payable in monthly intervals, signed in the name of the Crown Chandelier Company by Sidney M. Israel, attorney, and indorsed by the four defendants other than Mendel M. Pine, were delivered to the plaintiff. Pursuant to this arrangement the defendant Mendel M. Pine was enabled to and did secure goods from the plaintiff on credit from October 20, 1914, to August 30, 1916, at which time four promissory notes for $404.40 each, which had been given by the Crown Chandelier Company for merchandise purchased from the plaintiff and a check of that company for $413.28 having been protested for non-payment, the plaintiff refused to extend further credit. The defendants thereupon refused to pay the notes for $100 per month thereafter falling due.

At the trial the first cause of action was withdrawn. The learned justice dismissed the complaint on the ground that there

was no consideration shown for the notes, inasmuch as the amount and terms of credit to be extended were not specified.

The agreement was entirely parol. The parties to the negotiation had been dealing with each other for years and a definite credit had been established and was well understood by both parties. For this reason it was unnecessary that the details thereof should have been repeated at the time of the making of the contract. That this was true is demonstrated by the fact that they dealt with each other pursuant to the terms thereof for twenty-two months, until the defendants failed to pay notes that had been given for merchandise purchased. During this period there is no evidence of dissatisfaction on the part of the defendants with the credit established. The learned counsel for the respondents contends that if, after the giving of the notes in suit, the plaintiff had refused to extend credit, the agreement could not have been enforced; hence there was a lack of mutuality in the obligation. To the extent that equity would not decree specific performance of the contract, this is true. The reason for that, however, would be because the defendants would have an adequate remedy at law either in defense to an action upon the notes or for damages. It would be entirely competent for the defendants to show what credit had theretofore been extended, and thus make the obligations of the party clear. The plaintiff did not clearly prove that these notes were accepted in payment of the pre-existing debt of the Century Gas and Electric Fixture Company, and that company released from its obligation. There is testimony from which it appears that such might have been the case. If this was the fact, that in itself would be a sufficient consideration for the notes.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., SMITH and SHEARN, JJ., concurred; DOWLING, J., dissented.

DOWLING, J. (dissenting):

I believe that the dismissal of the complaint below was correct. The ground assigned was that the sole consideration

First Department, December, 1918.            [Vol. 185.

for the notes in question was a promise by plaintiff to extend a line of credit to certain of the defendants, which promise was so vague and indefinite as to be incapable of ascertainment and enforcement. The furthest that the witness Hawkins would go in his testimony was to say that he had told Israel that if the latter would pay an old indebtedness to plaintiff of the Century Gas and Electric Fixture Company, plaintiff would " go on and extend you the same credit as we always did and help you all we can." The opening of plaintiff's counsel upon the trial went no further than this in his claim of the proof he proposed to offer. It clearly appears that plaintiff did agree to extend some indefinite credit to Sidney M. Israel and David S. Pine, who were doing business as the Crown Chandelier Company, if they would pay the indebtedness to plaintiff of the Century Company. Mendel M. Pine had no connection whatever with the latter company, nor was he known at all to plaintiff's representatives. Notes were in fact given for the amount of the old indebtedness, seventy-two or seventy-three in all, for $100 each. Goods were delivered to the Crown Company, credit was given it by plaintiff to the extent of several thousand dollars and promissory notes given for the indebtedness and transactions between them were had until plaintiff refused to give further credit unless certain protested notes and checks were paid, whereupon defendants refused to pay any more of the $100 notes for the old indebtedness and this action was thereafter brought. There is not a word in this record to show what the extent of the credit was which plaintiff agreed to give; nor whether it was limited or unlimited; nor what was to be its duration; nor any particulars whatever thereof. There is no proof of what credit had been extended to the Century Company by plaintiff, so that it cannot even be said that plaintiff was giving the Crown Company " the same credit as we always did," treating both as the personal property of Israel and David S. Pine. There is no proof of any course of dealings between the parties which throws the slightest light upon what credit was to be extended. My conclusion is that the promise to extend credit was so vague and indefinite as to be unenforcible and that it could furnish no consideration for the notes in suit.

Plaintiff now claims that the real consideration for these notes was the extinguishment of the debt theretofore owing to plaintiff by the Century Company. Plausibility is sought to be given to this claim by certain sentences in the testimony of Hawkins that the notes were wanted " so that we can wipe your old ledger account off our ledger, showing that it has been paid, that would be then bills receivable." But no suggestion was made of such a claim upon the trial of the action; there is no such contention in the opening of plaintiff's counsel nor during the course of the trial, and the argument of plaintiff's counsel before the court at the close of the case, as well as the comments of the court thereupon, all demonstrate that the sole consideration for the giving of these notes claimed or relied upon by plaintiff, was the agreement to extend credit.

I am of opinion that the judgment appealed from should be affirmed, with costs.

Judgment reversed and new trial ordered, with costs to appellant to abide event.